IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,              No. 3:22-cr-00401-HZ

       Plaintiff,                      OPINION & ORDER

   v.

AMADOR MORA MADRIGAL,

       Defendant.

William M. Narus
Steven T. Mygrant
United States Attorney's Office
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204

   Attorneys for Plaintiff

Amador Mora Madrigal
85442-079
FCI LOMPOC
Inmate Mail/Parcels
3600 Guard Road
Lompoc, CA 93436

   Defendant, *Pro Se*

1 - OPINION & ORDER

HERNÁNDEZ, District Judge:

This matter comes before the Court on Defendant's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(C)(1)(A) and The First Step Act of 2018, ECF 58. For the reasons that follow, the Court denies Defendant's Motion.

## BACKGROUND

On November 15, 2022, Defendant was indicted on one count of possession with intent to distribute fentanyl in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). On November 20, 2023, Defendant pled guilty to the one count of the Indictment. On July 23, 2024, the Court sentenced Defendant to 110 months imprisonment followed by a five-year term of supervised release.[1]

Defendant moves *pro se* for compassionate release under 18 U.S.C. § 3582(C)(1)(A).

## STANDARDS

A federal district court generally "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824–25 (2010). Under 18 U.S.C. § 3582(c)(1)(A), Congress provided an exception, commonly known as compassionate release, to reduce a defendant's sentence for "extraordinary and compelling reasons." Under the original statute, only the Director of the Bureau of Prisons ("BOP") could file a § 3582(c)(1)(A) motion for a sentence reduction on a defendant's behalf. *United States v. Aruda*, 993 F.3d 797, 799 (9th Cir. 2021). The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5191 (2018), however, amended § 3582(c)(1)(A) to allow a defendant, after first requesting that the BOP move for a reduction on his or her behalf, to directly move the district court for a sentence reduction. 18 U.S.C. § 3582(c)(1)(A).

---

[1] Defendant's projected release date is August 25, 2030.

2 - OPINION & ORDER

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>     (i)    Extraordinary and compelling reasons warrant such a reduction; [. . . ]
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

The United States Sentencing Commission's policy statement identifies categories of extraordinary and compelling reasons. Before November 1, 2023, the Sentencing Commission's policy statement applied only to § 3582(c)(1)(A) motions filed by the BOP Director on behalf of a defendant. *Aruda*, 993 F.3d at 801. The Ninth Circuit concluded that on a defendant's direct motion for compassionate release, the policy factors "may inform a district court's discretion . . ., but they are not binding." *Id*. at 802 (citation omitted). On November 1, 2023, however, the Sentencing Commission amended the sentencing guidelines and explained that the amendment "extends the applicability of the policy statement to defendant-filed motions." U.S. Sentencing Commission, *Amendments to the Sentencing Guidelines* (Effective Nov. 1, 2023) at 7, https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf. Accordingly, a defendant must show extraordinary and compelling reasons to reduce the sentence consistent with the policy statement.

The policy statement identifies categories of extraordinary and compelling reasons to be considered individually and in the aggregate: the defendant's medical conditions, age, family circumstances, and status as a victim of abuse. U.S.S.G. § 1B1.13(b)(1)-(4). The policy

3 - OPINION & ORDER

statement also contains a catchall provision for other circumstances that, alone or when combined with circumstances from the specified categories, are "similar in gravity." *Id.* § 1B1.13(b)(5).

A defendant seeking a reduction of his sentence bears the burden to establish that he has exhausted administrative remedies and that extraordinary and compelling reasons warrant a reduction of his sentence. *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Greenhut*, 2:18-CR-00048-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020)(citing *United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998)(defendant bears the burden to establish entitlement to sentencing reduction)).

## DISCUSSION

### I. Exhaustion

Defendant requested compassionate release from the warden of FCI Lompoc on March 11, 2025, and his request was denied on March 17, 2025. Def.'s Reply, ECF 66, Ex. 1. Accordingly, Defendant has exhausted his administrative remedies and his Motion is ripe for review.

### II. Extraordinary and Compelling Reasons

Defendant seeks compassionate release on the grounds that (1) he suffers from ankylosing spondylitis, hypertension, and prostate cancer for which the Bureau of Prisons ("BOP") has failed to provide him with adequate care, (2) his sentence considered an improper "drug weight," and (3) he is subject to unwarranted sentencing disparities.

#### A. Medical Care

Defendant asserts that his medical conditions and lack of treatment are extraordinary and compelling reasons that warrant compassionate release. Defendant asserts

medical staff at FCI Lompoc have been deliberately indifferent to Defendant's conditions of ankylosing spondylitis, hypertension, and prostate cancer and, therefore, "it is appropriate for [him] to be released into an environment where he and his loved ones can control and direct his medical care." Def.'s Mot., ECF 58, at 14.

Several district courts have held that "[a]ny Eighth Amendment arguments defendant may have regarding the conditions of confinement may be properly brought in a habeas petition or a direct civil claim, not a motion for compassionate release." *United States v. Rollness*, No. CR06-041RSL, 2021 WL 4476920, at *6 n.6 (W.D. Wash. Sept. 30, 2021) (collecting cases). The Ninth Circuit, however, has specifically declined to rule on whether Eighth Amendment claims may be brought under § 3582(c)(1)(A). *See, e.g., United States v. Wheeler*, 837 F. App'x 542 (9th Cir. 2021); *United States v. Rivera*, 845 F. App'x 683 (9th Cir. 2021); *United States v. Alcaraz*, No. 22-10097, 2022 WL 12030043 (9th Cir. Sept. 19, 2022); *United States v. Arceneaux*, 830 F. App'x 859 (9th Cir. 2020). Accordingly, although Defendant's Eighth Amendment issues are likely better suited to a habeas petition or civil rights action, "there appears to be no barrier preventing the Court from considering his [allegations] under the compassionate release framework." *United States v. Slaughter*, No. CR13-359RSL, 2023 WL 5609339, at *4 (W.D. Wash. Aug. 30, 2023)(citing *United States v. Roper*, 72 F.4th 1097, 1100-01 (9th Cir. 2023)(noting the "broad discretion" district courts have in determining "what may constitute extraordinary and compelling reasons")). *See also United States v. Shelton*, No. 20-CR-00050-HZ, 2024 WL 4164528, at *2 (D. Or. Sept. 12, 2024)(considering Defendant's Eighth Amendment arguments under the compassionate release framework).

Defendant asserts that between January 3, 2023, and January 3, 2024, he was "given different types of medication to control his medical issues" and the BOP "opted to

5 - OPINION & ORDER

regulate his condition by providing painkillers without considering any other forms of treatment," which has caused Defendant "excruciating pain" and "demonstrates clear neglect on the part of the" BOP. Def. Mot. at 14. A review of Defendant's BOP medical records, however, reflects that he sees a rheumatologist annually for care of his ankylosing spondylitis symptoms. Defendant last saw the rheumatologist in October 2024 and was scheduled to be seen again in August 2025. Govt. Ex. A at 5, 10. Defendant is prescribed four medications related to his ankylosing spondylitis, is seen by regularly by health providers in his housing unit, and is provided with a wheelchair or a crutch to aid movement when needed. Defendant is also seen in the Chronic Care Clinic for his ankylosing spondylitis, hypertension, and prostate cancer. Plaintiff is provided with high blood pressure medication, a special diet, and emergency options when needed to address his high blood pressure. *See, e.g.,* Govt. Ex. A at 3, 21, 46-47, 126. In addition, Defendant's prostate specific antigen ("PSA") is tested every six months and has declined during his incarceration. *See, e.g.,* Govt. Ex. A at 3, 38, 41, 169, 220.

The Court concludes on this record that Defendant has not established a lack of medical care rising to the level of an extraordinary and compelling reason to reduce his sentence.

### B.     Drug Weight

Defendant asserts that he pled guilty to possession with intent to distribute 400 grams or more of fentanyl but that the Court considered at sentencing the 4.0 - 4.5 kilograms of fentanyl that Defendant stipulated to in the plea agreement even though that weight was not proved to a jury beyond a reasonable doubt. Defendant, relying on *United States v. Simons,* 375 F. Supp.3d 379 (E.D.N.Y. 2019), contends that his sentence should, therefore, be reduced.

The Indictment charged Defendant with possessing with intent to distribute four hundred grams *or more* of fentanyl. In addition, the Plea Agreement stated that the parties agreed

6 - OPINION & ORDER

"the converted weight of cash seized as well as the combined weight of pills defendant possessed with the intent to distribute was at least 4 but less than 12 kilograms of a mixture or substance containing a detectable amount of fentanyl." Plea Agreement, ECF 33, ¶ 7. The Court accepted the Plea Agreement. In *Simons*, the court explained that "[s]tatutory penalties are determined by facts submitted to a grand jury, a trial jury, or *established by a guilty plea*." 375 F. Supp.3d at 387 (emphasis added). The drug weight here was determined by the Plea Agreement and the guilty plea. Accordingly, the Court's consideration at sentencing of the amount of drugs agreed to in the Plea Agreement is not an extraordinary and compelling reason to reduce Defendant's sentence.

        **C.**        **Firearm Enhancement**

Defendant's sentence was enhanced pursuant to United States Sentencing Guideline ("USSG") § 2D1.1(b)(1), which provides for a two-level enhancement when "a dangerous weapon (including a firearm) was possessed." Defendant contends his gun enhancement should be dismissed and his sentence vacated because "he is actually innocent of said conviction." Def. Mot. at 17. Defendant argues that the firearm was "found inside his residence,[2] where no drug transaction has been made nor done when it was found. In sum, it was all an assumption made by the authorities that the firearm found and drugs were allegedly connected." *Id*. at 18.

The Plea Agreement, however, provides that the parties "agree to a two-level upward adjustment for possession of a firearm pursuant to USSG § 2D 1.1 (b )(1) because defendant possessed a firearm during the commission of the offense." Plea Agreement at ¶ 8.

---

[2] "Three . . . residences associated with the defendant were . . . searched, resulting in the seizure of one .40 caliber Smith & Wesson handgun" and ammunition. PSR ¶ 17.

7 - OPINION & ORDER

The Court accepted the Plea Agreement and the facts agreed to therein. Facts established by a guilty plea are no longer merely assumptions and support the sentencing enhancement here. Defendant's claim of actual innocence of the firearm enhancement, therefore, is not a basis for a reduction in Defendant's sentence.

### D. Sentencing Disparities

Defendant asserts his sentence should be reduced because he is "in effect, to be sentenced today, after the passage of the First Step Act; and the need to avoid unwarranted sentencing disparities is to be assessed at the time of the sentencing today relative to those comparable offenders who have been sentenced following the passage of the First Step Act." Def. Mot. at 19. Defendant argues that his "sentence in 2023 is now disparate relative to Defendant's [*sic*] who were sentenced post-FSA." *Id*. at 20. In summary, Defendant relies on passage of the FSA to show that his sentence is outside the range of those given to similar defendants who were sentenced post-FSA.

The FSA was passed in 2018 and Defendant was sentenced in 2024. Defendant's sentence is, therefore, already a post-FSA sentence. In addition, Defendant cites no support for his assertion that individuals with similar factual circumstances received shorter sentences than Defendant. In fact, the PSR found that the median sentence for similarly situated defendants from 2018 through 2022 was 102 months. The eight-month difference between the median sentence and Defendant's 110-month sentence is not a gross disparity. The Court concludes the alleged sentencing disparity is not an extraordinary and compelling reason to reduce Defendant's sentence.

### III. Sentencing Factors

The government asserts even if Defendant has satisfied the criteria of U.S.S.G. § 1B1.13(b)(2), the § 3553(a) factors counsel against any reduction in Defendant's sentence.

Before modifying an imposed term of imprisonment, a Court must consider the sentencing factors set forth in 18 U.S.C. § 3553(a). Those factors include the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence imposed "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes by the defendant; and (D) to provide the defendant with needed educational and vocational training, medical care, and other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2). A district court's "overarching statutory charge . . . is to impose a sentence sufficient, but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; and to protect the public." *United States v. Lizarraras-Chacon*, 14 F.4th 961, 966 (9th Cir. 2021)(internal quotation and citation omitted).

The nature and circumstances of Defendant's offenses are serious. Confidential informants purchased 5,050 fentanyl pills from Defendant between September and October 2022. PSR at ¶ 16. In November 2022 agents seized 5,000 fentanyl pills from Defendant's vehicle during a traffic stop, and the search of residences associated with Defendant produced a handgun, ammunition, drug packaging material, modified concealment containers, six cell phones, a transaction ledger, and $407,466 in U.S. currency. *Id.* ¶ 17. "The total amount of cash seized, $407,466 at $10 per pill equates to approximately 40,746.6 pills sold." *Id.* ¶ 18. Defendant agreed in the Plea Agreement that he possessed and intended to distribute at least four kilograms of fentanyl. This evidence indicates that Defendant was not a small-time dealer. In

9 - OPINION & ORDER

addition, although Defendant asserts he is no longer a threat to society due to his medical conditions, the record reflects that he had already been diagnosed with those conditions at the time he was distributing fentanyl in 2022.

In summary, the nature and circumstances of Defendant's underlying offenses are significant and the sentence imposed by this Court reflects the seriousness of the offenses, affords adequate deterrence, and protects the public from further crimes by Defendant. *See* 18 U.S.C. § 3553(a)(2). The Court, therefore, concludes that Defendant has not carried his burden to show that a reduction of his sentence would be consistent with the federal sentencing factors. Accordingly, the Court denies Defendant's Motion for Compassionate Release.

## CONCLUSION

The Court DENIES Defendant's Motion for Compassionate Release, ECF 58.

IT IS SO ORDERED.

DATED:  September 30, 2025    .

_____
MARCO A. HERNÁNDEZ
United States District Judge

10 - OPINION & ORDER